STATE OF MAINE                          SUPERIOR COURT
PENOBSCOT, SS.                          Docket No. AP-00-60

FILED AND ENTERED
SUPERIOR COURT

DEC 3 1 2001

PENOBSCOT COUNTY

Gary A. Fogg,
          Plaintiff/Appellant


          v.                            **ORDER ON APPEAL**


Town of Eddington,
          Defendant/Appellee

          and

Peter Roderick,
          Intervenor



          Pursuant to 30-A M.R.S.A. § 2691(3)(G) and M.R.Civ.P. 80B, Gary A.
Fogg appeals the decision of the Town of Eddington Zoning Board of
Appeals ("the Board"), finding that the Town's Code Enforcement Officer
("CEO") improperly issued him a building permit for a proposed structure.
Fogg argues here that the Board incorrectly determined that the building
would not be an accessory structure and, as a result, that he was required
to obtain a use permit.

          In September 2000, Fogg applied for a building permit to allow
construction of a metal structure that would be 30' by 100' in size. (R. 5.)
In his permit application, Fogg stated that he intended to use the building

1

exclusively for "private and personal" purposes. (R. 5.) The site for the proposed building is in residential zone B. (R. 5.) The Town's zoning ordinances provide that

> Residential B zone is established as a zone for residential use of existing housing and new multi-family housing. Other uses permitted in the zone [including accessory uses] are those which are in keeping with the traditional pattern of development in residential neighborhoods in the Town of Eddington.

TOWN OF EDDINGTON, MAINE ZONING ORDINANCE § 202. (R. 11.) "Accessory Uses and Structures" are permitted in zone B. *Id.* at § 202.1(j). The ordinances define an "accessory" as one that is "[c]ommonly associated with or in support of the primary or principal use of a lot or structure." *Id.* at § 102.

The Town's CEO issued the building permit. An owner of property adjoining the parcel where Fogg intended to build the structure filed an appeal to the Board.[1] On November 30, 2000, the Board held a hearing on the appeal. The minutes[2] indicate that after the Board took testimony, a Board member moved to vacate the building permit on the ground that "the building is not an accessory structure since it would be built across and down the road from Mr. Fogg's residence, on a different lot." The Board then voted to approve the motion, thereby granting the neighbors' appeal. In its written findings and conclusions, *see* 30-A M.R.S.A. § 2691(3)(E), the

---

[1] The adjoining property owner, Peter Roderick, appears in this appeal as an intervenor. Although Fogg objected to Roderick's motion to intervene in this proceeding, Roderick clearly has standing. *See Rowe v. City of South Portland*, 1999 ME 81, ¶ 3, 730 A.2d 673, 674.

[2] The record on appeal includes the minutes of the November 30 meeting and a transcript of the first portion of that meeting. The transcript is of very limited value in this proceeding because it clearly is incomplete and because much of it is unintelligible.

Board concluded that the proposed "building does not qualify as an accessory structure on the lot designated in the building permit because that lot is across the Route 178 road from Gary Fogg's lot of residence." The written decision does not indicate (as did the oral motion accepted at hearing, according to the minutes) that the proposed building site was also down the road from Fogg's residence. Accordingly, the Board found that Fogg was required to obtain a use permit because the proposed development required a site plan review. *See* TOWN OF EDDINGTON, MAINE BUILDING PERMIT/SITE PLAN REVIEW ORDINANCE § 920(4). (R. 10). On this basis, the Board granted the neighbor's appeal. (R. 8.) And on the basis of the Board's decision, the CEO issued a stop work order to Fogg. (R. 7.)

Particularly because the CEO and the Board reached different conclusions regarding Fogg's building permit application, the first question to be addressed here is whether this court reviews the CEO's decision to issue a building permit, or the Board's decision that Fogg was not entitled to a building permit.[3]

Section 1422 of the Town's "Building Permit/Site Review Ordinance" authorizes the Board to hear appeals from decisions made by the CEO. "Such hearings shall be in accordance with State laws." *Id.* The Board is then authorized to reverse the CEO's decision if the Board concludes that it was "unsupported by substantial evidence in the record" or if was unlawful under the provisions of the Town's ordinances. *Id.*

Title 30-A M.R.S.A. § 2691 establishes the procedure controlling proceedings before municipal zoning boards of appeal. Those procedures

---

[3]Although at oral argument the parties agreed that the Board's decision is subject to appellate review here, Fogg's written argument casts the Board in an appellate role. *See* "Brief of Appellant" at 14.

3

includes the Board's authority to accept oral and documentary evidence, the parties' rights to cross-examine witnesses and other procedures common to a factfinding process. A board of appeals is required to conduct a de novo hearing on a matter originating with a municipality's CEO, "unless the municipal ordinance explicitly directs otherwise. . . ." *Stewart v. Town of Sedgwick*, 2000 ME 157, ¶ 7, 757 A.2d 773, 776. Here, the Town's ordinance does not "explicitly direct[]" that the Board's role is limited to an appellate review of the CEO's decision. Rather, the Board's proceedings are governed by state law and therefore, under *Stewart*, are a de novo process. Consequently, this court reviews the Board's decision to deny Fogg a building permit, rather than the CEO's decision to issue such a permit.

A board's decision is reviewed for an abuse of discretion, errors of law or findings not supported by substantial evidence in the record. *Chapel Road Associates, L.L.C. v. Town of Wells*, 2001 ME 178, ¶ 9, ___ A.2d ___, ___. "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Veilleux v. City of Augusta*, 684 A.2d 413, 415 (Me. 1996) (citation and internal punctuation omitted). Here, the Board vacated the CEO's decision to issue the building permit on the specific factual ground that Fogg sought to build the structure across the road from his residence (as stated in the Board's written findings and conclusions), or that he sought to build the structure across and down the road from the location of his residence (as reflected in the actual decision made by the Board at the meeting, according to the minutes). Therefore, the precise question raised on this appeal becomes whether the evidence presented at the November 30 hearing supported the conclusion that Fogg's proposed structure would not

be an accessory within the meaning of the Town's ordinances because the site for Fogg's proposed building was (at the very least) across the street from Fogg's residence. The variation between the Board's decision as reflected in the minutes and its written decision is not material, because either way the Board concluded that the physical separation between Fogg's houselot and the proposed building site took the proposed building outside of the concept of an accessory.

The Board's written findings do not address the relative locations of Fogg's residence and the location of the proposed building. Rather, it only identifies the building site as map 13, lot 1. Fogg's permit application includes an apparent copy of the tax map, revealing the location of lot 1. (R. 5.) However, none of the record material indicates the location of Fogg's residence.[4]

The minutes of the November 30 meeting provide little information about the location of the proposed building site in relation to Fogg's residence. During the meeting, a Board member inquired "if there were other cases in Eddington of accessory structures on separate, non-contiguous lots to the residence lot." Otherwise, the various presentations at the meeting focused more generally on whether a large storage building such as that envisioned by Fogg was consistent with the character of a residential neighborhood. For example, two Board members indicated that in Eddington it was common to find such structures associated with residences. Also, a person identified in the minutes as a "neighbor" stated

---

[4] In its brief on this appeal, the Town has included documents that are not part of the record. This material may provide information regarding the location of Fogg's residence. Because these documents are not part of the record, the court disregards them -- just as the court agrees with the Town that it should not consider additional materials, not included in the record, that Fogg attached to his reply brief.

during the hearing "that 30' by 100' metal storage sheds are not commonly associated with residential neighborhoods. . ." and that the proposed building "is out of harmony with the area. . . ." However, these comments do not address the specific issue on which the Board made its decision. The Board did *not* conclude that the building proposed by Fogg was not an accessory structure generally. Rather, the Board concluded that it was not an accessory structure *because of its relative location to Fogg's residence.*

The record does not include substantial evidence to support a conclusion that this particular circumstances brings Fogg's proposed building outside of the scope of an accessory structure. Indeed, the record does not even reveal where Fogg sought to construct the building in relation to the location of his residence. If the Board had concluded more generally that the building was not an accessory because it is not "in keeping with the traditional pattern of development in residential neighborhoods in the Town of Eddington," *see* TOWN OF EDDINGTON, MAINE ZONING ORDINANCE § 202, then the Board's conclusion may have been proper because it was supported by substantial evidence (namely, the testimony of the "neighbor," Gary Poisson). However, that was not the Board's decision. Nothing in this record provides evidential support for the Board's specific conclusion that the building was not an accessory due to its physical relationship to the location of Fogg's residence.

The Town urges the court to conclude that even if the basis for the Board's decision was incorrect, it nonetheless arrived at the correct result because the building proposed by Fogg would not be an accessory in zoning district B, irrespective of its location in relation to the associated residence. The Board, however, did not reach this issue. Consequently, the analysis

urged here by the Town calls for an original assessment of factual issues. *See Town of Shapleigh v. Shikles*, 427 A.2d 460, 465 (Me. 1981). The court declines to engage in the factfinding function that is properly within the Board's authority and beyond this court's appellate role.

Finally, the Town and intervenor argue that as a matter of law, Fogg is precluded from litigating his entitlement to the building permit, because in 1999 he had applied for a similar permit, the Board concluded that the permit should not issue, and that decision became final due to the absence of any appeal. *See* R. 1-4.

A final administrative determination precludes relitigation of issues that were tried, or could have been tried, in the earlier proceeding. *Wozneak v. Town of Hudson*, 665 A.2d 676, 678 (Me. 1995). Despite some similarities between Fogg's 1999 and 2000 permit applications, a fundamental difference forecloses a res judicata effect flowing from the 1999 permit proceeding. In his 1999 permit application, Fogg intended to build the structure for use as a rental storage building, which would give rise to a "small, commercial business." (R. 3.) The Board concluded that because of the intended commercial use of the building, its construction was prohibited under the Town's zoning ordinances. On the other hand, the proposed building associated with the 2000 permit application was for "private and personal use only!" (R. 5.) It therefore did not generate the issue on which the Board denied the 1999 application. Further, because Fogg's 1999 application specifically hinged on the creation of a business facility, there was no occasion in 1999 for Fogg to raise the issues that are present in this case, and the Board had no occasion in 1999 to consider the issues at bar today.

The entry shall be:

For the foregoing reasons, the decision of the Town Zoning Board of Appeals is vacated. This case is remanded to the Board for further proceedings consistent with this opinion.

Dated: December 28, 2001

_____
Justice, Maine Superior Court