**TOWN OF SHAPLEIGH**

v.

**John G. SHIKLES et al.**

Supreme Judicial Court of Maine.

Argued November 20, 1980.

Decided March 17, 1981.

Calkins & Wuesthoff, Robert B. Calkins, Portland, Hugh Calkins, Dover-Foxcroft (orally), for plaintiff.

Cabanne Howard (orally), Asst. Atty. Gen., Augusta, for Amicus Curiae.

Bourque, Brodrick & Scaccia, by Ronald D. Bourque, Sanford (orally), for defendants.

Before McKUSICK, C. J., WERNICK, NICHOLS, GLASSMAN, ROBERTS and CARTER, JJ., and DUFRESNE, A. R. J.,

DUFRESNE, Active Retired Justice.

The defendants, Jack G. Shikles and his wife, Irene, proceeded to build a guest house on 21st Street, in Shapleigh, pursuant to a permit issued on May 15, 1978, to their contractor-builder, Robert E. Weaver. Claiming that they were erecting a principal structure instead of an accessory building as contemplated by the permit, Daniel Greenwood, the Town's Code Enforcement Officer, on August 4, 1978, ordered all work on the site to stop, revoked the May 15 permit and informed the defendants that, unless they took corrective action by August 18, 1978, they would be subject to daily fines up to one hundred ($100.00) dollars, if found guilty of the zoning law violation (section 6.7, Zoning Ordinance, Town of Shapleigh). When curative steps to conform were not forthcoming, the Town, pursuant to section 6.6, Zoning Ordinance, Town of Shapleigh,[1] filed the instant complaint for mandatory injunctive relief to compel the Shikles to adjust their building project so as to meet the requirements of the ordinance to the extent of removing that portion of the construction which was in violation. After a bench trial in Superior Court, York County, the presiding Justice found the defendants in violation of the ordinance and ordered them, their agents, assigns, or any one acting in concert with them "not to engage in any further construction on said building located on the premises .... unless authorized by said Town by a lawful building permit granted by the Town after final judgment in this case." The Town appeals from this judgment which it claims provided inadequate relief, while the Shikles cross-appeal on the ground that the defendants' structure is neither in violation of the building permit, nor in violation of the Town's zoning ordinance, and also, because the Town is estopped by conduct in seeking equitable relief under the circumstances of the case. The Attorney General has filed a brief *amicus curiae* in support of the Town's position. We deny both the Town's appeal and the Shikles' cross-appeal.

---

1. Zoning Ordinance, Town of Shapleigh.

Section 6.6 *Legal Action and Violations*

When any violation of any provision of this Ordinance shall be found to exist, the Municipal Attorney, as designated by the Municipal Officers, either on his own initiative, or upon notice from the Code Enforcement Officer, is hereby authorized and directed to institute any and all actions and proceedings, either legal or equitable, that may be appropriate or necessary to enforce the provisions of this Ordinance in the name of the municipality.

## Facts

The defendants, in 1970, purchased a summer cottage and lot abutting Mousam Lake in Shapleigh. This lot was designated number 36 on an approved subdivision plan of the area. In 1973, for the price of $8,000.00, they acquired a contiguous lot designated number 37 on the stated plan. That same year, they procured a building permit to build a cottage on the newly obtained plot of land. Because they ran out of money, the defendants merely got the shell of the cottage up and the septic system installed. This structure was used thereafter as a garage.

In 1974, the Town of Shapleigh enacted the present zoning ordinance. Being situated in a zone classified as a general purpose district, the defendants' land, by reason of the ordinance, became subject to new restrictions. Section 1.4.5.2 of the ordinance provides that contiguous lots in single ownership such as the Shikles' lots must be considered a single parcel for the purpose of the ordinance, where neither of the two lots meet the minimum dimensional requirements of the ordinance, i. e. 80,000 square feet (section 4.4.6). Furthermore, the uses allowed the Shikles by the ordinance under the single parcel concept to be applied to their contiguous lots held in single ownership consist of a single family dwelling, plus accessory uses and structures (section 4.4.3.-2). Also, section 4.4.6.2 provides:

> If more than one principal building is constructed on a single lot, all dimensional requirements shall be met separately for each such principal building.

The ordinance, in section 3.2, defines the terms "accessory use or structure" as a use or structure of a nature customarily incidental and subordinate to those of the principal use or structure, and the term "principal building" as the building in which the primary use of the lot is conducted.

In the spring of 1978, the defendants contacted their friend, Robert Weaver, a local contractor, to build them a cottage on lot designated number 37, so as to serve their convenience in housing their summer company and their own four children. Being familiar with Shapleigh's zoning ordinance, which prohibited more than one principal building on the Shikles' land, Weaver applied for a permit to build a guest house as an accessory structure; specifically, the application detailed the dimensions of this one story project as 20' × 24' for the guest house proper, with a 12' × 24' breezeway area connecting with the existing garage. Mr. Greenwood, the Town's Code Enforcement Officer, issued the permit.

On his second inspection of the premises on August 4, 1978, Greenwood observed what he considered a violation of the zoning ordinance. Instead of plumbing for one toilet, one lavatory and one hook-up to the septic tank on the ground floor, he found, in addition thereto, a shower, plus a complete plumbing system for the second floor. The Shikles had erected the guest house so-called, over a full basement; they had originally planned the guest house over a cellar. Greenwood further noticed that the length of the guest house was six to seven feet more than what the permit called for. The Officer considered that the Shikles had exceeded the terms of the construction permit, by erecting a two-story building, extending the length of the structure beyond the stated footage, and installing plumbing to serve what he figured to be a bathroom and kitchen on the second floor. This resulted in the reference stop order and revocation of the building permit.

The evidence disclosed that no complaints were registered by any abutter, that the Shikles' basement construction is similar to a number of basements in the lake or beach area, and that other buildings on the same road have similar exterior designs.

In his decision, the presiding Justice specifically noted the testimony of Mr. Greenwood who testified that the building *as is* could be the subject of a lawful permit and that the building *as is* does not in and of itself violate the zoning ordinance. The Officer's position was clearly stated to the effect that, if a full bathroom and kitchen were to be built on the second floor, then the new construction would be a principal building and not an accessory structure, in

violation of the ordinance. Finding the defendants in clear violation, the presiding Justice ordered all construction to cease *unless* authorized by the Town under a lawful building permit [when and if] granted by the Town.

The Town contends that the Superior Court Justice erred in refusing to order the removal of the illegal building. The argument is that the instant construction was in excess of the building permit and constituted a nuisance under 30 M.R.S.A. § 4962(1)(F).[2] It is claimed that, under *City of Lewiston v. Grant*, 120 Me. 194, 113 A. 181 (1921), once the court finds that a structure is a statutory nuisance for having been erected contrary to a zoning ordinance, the traditional test of balancing the equities in formulating remedial relief by a court of equity does not apply, on the theory that the Legislature, by declaring violations of zoning laws to be nuisances, has deprived the court of the use of any discretion in such matters. We disagree.

It is true that in the *City of Lewiston* case, *supra*, as well as in *Wadleigh v. Gilman*, 12 Me. 403 (1835) and *Houlton v. Titcomb*, 102 Me. 272, 66 A. 733 (1906), this Court did rule that the erection or enlargement of wooden buildings in designated fire districts in violation of ordinances prohibiting the same would automatically create a nuisance as the statute ordains and that such nuisances, when found to exist, are properly removable by order of a court of equity, and, if threatened, are rightfully subject to perpetual enjoinment. We believe that this Court went beyond the necessities of the case, when it concluded from the Legislature's authoritative suggestion, which merely characterized the reference conduct nuisances, that such statutory declaration simultaneously curtailed any discretionary power inherent in our courts of equity which traditionally in the field of nuisances formulated equitable relief by balancing the interests of the parties involved under all the existing circumstances.

This Court, in *Natale v. Kennebunkport Board of Zoning Appeals*, Me., 363 A.2d 1372, (1976) in footnote 9, at 1377, strongly hinted that the *City of Lewiston* case might not presently represent the law of Maine in relation to the injunctive process, when it stated:

> One having a cause of action against another is not thereby *automatically* entitled to an injunction as a matter of right, since the evaluation of all of the facts material to an appropriate balancing of the equities might show that resort to the remedy of injunction might be unduly harsh in all the circumstances. (Emphasis in original).

In the case of *Inhabitants of Town of Boothbay, etc. v. Russell*, Me., 410 A.2d 554 (1980), this Court accepted the quoted *Natale* footnote as the binding law in Maine. Thus, we hold in the instant case that the nuisance statute, 30 M.R.S.A. § 4962(1)(F), in aid of enforcement of zoning law restrictions, was not intended by the Legislature to preclude by implication our equity courts from exercising in such circumstances their inherent power to use discretion in moulding each decree to the necessities of the particular case. The historic injunctive process has been one of great flexibility in administering practical equity between the public interest and the private needs as well as between competing private claims. Such major departure from a long tradition as is here proposed should not be lightly implied by the court in construing legislation. *See Hecht Co. v. Bowles*, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754 (1944).

An injunction will be denied where the granting of it would be inconsistent with basic principles of justice and equity, even though it is within the scope of relief available in equity courts to enjoin violations of zoning laws. When a municipal corporation, like Shapleigh in this case, seeks vindication of public rights by injunc-

2. 30 M.R.S.A. § 4962(1)(F).

Any property or use existing in violation of any zoning ordinance is a nuisance.

tion in a court of equity, it is on the same footing as any private person or corporation. The application for injunctive relief is addressed "to the conscience of the chancellor," who may in the exercise of sound discretion either grant or deny the prayer for relief as the circumstances may dictate. *Salt Lake County v. Kartchner,* 552 P.2d 136 (Utah 1976); *City of Dallas v. Gaechter,* 524 S.W.2d 400 (Tex.Civ.App.1975).

The plaintiff Town further contends that the Superior Court Justice committed an abuse of discretion and reversible error, when, after finding a clear zoning ordinance violation of such substance that it could not be classified as *de minimis,* he refused, as requested, to mandate compliance with the ordinance by ordering removal of the illegally erected structure.

■ As noted previously, one having a cause of action against another for violation of zoning law restrictions is not thereby *automatically* entitled to an injunction *as a matter of right. See Coombs v. Lenox Realty Company,* 111 Me. 178, 181–182, 88 A. 477 (1913); *Levasseur v. Dubuc,* Me., 229 A.2d 201 (1967). When the Justice below enjoined further construction following the revocation of the defendants' permit by the Code Enforcement Officer unless the defendants were granted a new lawful building permit by the Town in relation to the presently existing structure, he was doing equity between the parties and moulding his decree to the necessities of the case. He was protecting the interests of the municipality in stopping any further construction under a building permit that had been admittedly violated in certain aspects. At the same time, by redirecting the parties in regards to the future disposition of the presently incomplete building project to the zoning authorities, he was preserving the defendants' rights in obtaining administrative relief within the terms of the ordinance upon a more specific application.

■ We note that the revocation of the building permit by the Code Enforcement Officer was made, seemingly, because he considered the structure *as built* to be a principal building, while the permit had au-

thorized only an accessory guest house and the ordinance prohibited the construction of more than one principal building on the defendants' land area. The instant ordinance defines an accessory use or structure (Section 3.2, Zoning Ordinance, Town of Shapleigh) as a use or structure of a nature customarily incidental and subordinate to those of the principal use or structure. The Supreme Court of Connecticut was confronted with construing a similar ordinance in *Lawrence v. Zoning Board of Appeals,* 158 Conn. 509, 264 A.2d 552 (1969). It held that the essence of an accessory use or structure by definition admits to a use or structure which is dependent on or pertains to a principal use or main structure, having a reasonable relationship with the primary use or structure and by custom being commonly, habitually and by long practice established as reasonably associated with the primary use or structure. It is obvious that factors, which will determine whether a use or structure is accessory within the terms of a zoning ordinance, will include the size of the land area involved, the nature of the primary use, the use made of the adjacent lots by neighbors, the economic structure of the area and whether similar uses or structures exist in the neighborhood on an accessory basis.

Thus, it can be seen that the application to a particular situation of the concept of accessory use or structure as defined by the instant zoning ordinance may often present and depend upon questions of fact for initial administrative determination by building inspectors and zoning board of appeals officials, even though the meaning of terms or expressions in zoning ordinances is a question of construction and one of law for the Court. *Lawrence v. Zoning Board of Appeals, supra,* 264 A.2d at 555; *Moyer v. Board of Zoning Appeals,* Me., 233 A.2d 311, at 318 (1967). *See Gross v. Zoning Board of Adjustment of City of Phila.,* 424 Pa. 603, 227 A.2d 824 (1967); *Gratton v. Pellegrino,* 115 N.H. 619, 348 A.2d 349 (1975). *See also Wickenden v. Luboshutz,* Me., 401 A.2d 995 (1979).

██ We hold that, under the peculiar circumstances existing in this case, there was no abuse of discretion on the part of the presiding Justice in fashioning the equitable relief granted in the way he did. Absent any prohibition in the ordinance against repetitive applications for building permits, the defendants may re-apply to the Code Enforcement Officer upon a more specific application to legitimize the present construction or secure permission to go beyond the revoked permit. If unsuccessful, the defendants could appeal this official's decision within thirty (30) days thereof to the Board of Appeals (Section 6.8.2.4, Zoning Ordinance, Town of Shapleigh), with further appeals to the courts, if necessary. Should the defendants meet with success of a final nature at any level, then the instant injunctive decree could be modified to reflect the changed circumstances on motion or supplemental plenary action. Rule 60(b)(5) and (6), M.R.Civ.P. *See also Boothbay Harbor Condominium I v. Whitten*, Me., 387 A.2d 1117 (1978); *Hackett v. Eaton*, Me., 389 A.2d 848 (1978); *People v. Mulgrew*, 19 Ill.App.3d 327, 311 N.E.2d 378 (1974); *Ward v. Prospect Manor Corporation*, 188 Wis. 534, 206 N.W. 856, 861, 46 A.L.R. 364 (1926).

██ The power to modify injunctions in the light of changing conditions is essential to a court of equity, and the finality of judgment rule must be taken as incorporating this necessary congruent ingredient. As stated in *Material Service Corp. v. Hollingsworth*, 415 Ill. 284, 112 N.E.2d 703, at 705 (1953):

> "A final or permanent injunction is a continuing process over which the equity court necessarily retains jurisdiction in order to do equity. And if the court of equity later finds that the law has changed or that equity no longer justifies the continuance of the injunction, it may and should free the defendant's hands from the fetters by which until then its activities have been prevented, . . ."

██ The plaintiff Town was not entitled as of right to affirmative injunctive relief of removal of the offending structure, nor was there an abuse of discretion in the Court's decree conditioning the restraining order until such time as a lawful building permit be secured from the Town by the defendants. Such action was consistent with the rule that administrative remedies should be exhausted, unless excused by futility or otherwise, before collateral judicial review of the merits of an administrative decision may be sought (*Cunningham v. Kittery Planning Bd.*, Me., 400 A.2d 1070, at 1076 (1979)), and that, where zoning problems involve matters of fact, their initial determination should be made at the administrative level, rather than by the judiciary. *Moyer v. Board of Zoning Appeals, supra*, at 318. *State ex rel. Brennan v. R. D. Realty Corporation*, Me., 349 A.2d 201, at 207 (1975).

██ The defendants, on the other hand, are in no position to claim aggrievement from the judgment. They had failed to appeal the revocation of their building permit to the Board of Zoning Appeals. In so doing, they have not exhausted an available administrative remedy wherein the factual question surrounding the claimed accessory use could be determined, the applicability of the ordinance's "principal building" restriction to the facts of the instant case could be decided, and their claim that the lot designated number 37 is immune from the stated limitation by reason of "grandfather" status could be first ascertained. As in *Gagne v. Lewiston Crushed Stone Company, Inc.*, Me., 367 A.2d 613, 617–618 (1976), we must conclude that in the instant circumstances it is not open to the defendants to have the Superior Court judgment reversed for that Court's failure to decide the merits of substantive issues, the review of which should be undertaken initially at the administrative level. *See also Cunningham v. Kittery Planning Bd., supra*, at 1076.[3]

---

**3.** Again, as we pointed out in footnote 13 of *Gagne v. Lewiston Crushed Stone Company, Inc.*, at 623, we do not wish to intimate any opinion whether or not prior resort to the administrative forum would be necessary in a situation in which the merits of substantive

Although the Superior Court Justice was correct in granting limited injunctive relief to the plaintiff Town and referring the defendant-owners to the administrative authorities for future disposition of the instant construction project, in the circumstances of this case we must remand the matter for modification of the language of the Court's injunction. The prohibitory feature of the decree is without time limit, since it enjoins further construction "unless authorized by said Town by a lawful building permit granted by the Town after final judgment in this case." This objection in and of itself is not sufficient to taint the decree with invalidity; we interpret the Court's order as meaning that any further construction by the defendants is barred unless *within a reasonable time* from the judgment becoming final they do obtain a lawful permit for further construction. *See Virginian Ry. Co. v. System Federation No. 40, etc.,* 4th Cir., 84 F.2d 641, 654 (1936), affirmed 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789 (1937). We believe, however, that the parties are entitled to a more definitive judgment respecting the defendants' next initiative in the instant impasse.

The Justice's order should be amended by adding thereto the following:

The defendants shall initiate a more specific application for a new permit within sixty (60) days from the date of this decree and prosecute the same with diligence thereafter before the proper administrative agencies until final adjudication, without prejudice to the Town of Shapleigh to make objection and prosecute all necessary appeals from any adverse decision. Should the defendants abandon the construction project by failing to take the initiative within the stated time period, or should their right to a permit be denied by final adjudication at the administrative level or by judicial decree on appeal, then the Town

of Shapleigh may prosecute such action as it may deem necessary to seek mandatory removal of the existing construction, such issue to be adjudicated anew, hopefully, upon a better record than that which was presented to the court in this instance.[4]

The entry will be:

Plaintiff's appeal denied.

Defendants' cross-appeal denied.

Case remanded to the Superior Court for alteration of the Justice's order of February 12, 1980 in accordance with this opinion.

Judgment as modified affirmed.

The parties are to bear their own costs on appeal.

All concurring.

---

claims of the parties are capable of being determined strictly as a matter of law. As we did then, we reiterate that a prior administrative adjudication, by reason of the experience and expertise of zoning board officials, may assist the court in reaching an appropriate decision on the issue of law.

4. We do not reach, nor do we express any opinion on, the alleged issue of estoppel which the defendants have raised in their pleadings.