2008 ME 45

### LANE CONSTRUCTION CORPORATION

v.

### TOWN OF WASHINGTON et al.

and

### Land Association of Washington et al.

v.

### Town of Washington et al.

Supreme Judicial Court of Maine.

Argued: Jan. 15, 2008.
Decided: March 11, 2008.

Edmond J. Bearor, Esq. (orally), Robert W. Laffin, Esq., Rudman & Winchell, LLC, Bangor, for Lane Construction Corporation.

Michael A. Hodgins, Esq. (orally), Bernstein, Shur, Sawyer and Nelson, Augusta, for Town of Washington.

Robert Marks, Esq. (orally), Washington, for Land Association of Washington.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, and GORMAN, JJ.

LEVY, J.

[¶ 1] Lane Construction Corporation appeals from a judgment entered in the Superior Court (Knox County, *Wheeler, J.*) affirming a decision of the Town of Washington Board of Appeals that affirmed the Town Planning Board's reconsidered decision to deny Lane a permit for a rock crusher at its quarry operation. The Planning Board reached this reconsidered decision after the Superior Court (*Marden, J.*) affirmed a decision of the Town Board of Appeals that vacated the Planning Board's initial approval of the rock crusher as part of the process of quarrying. Lane also appeals the Planning Board's decision to deny its application for a permit to operate bituminous asphalt and concrete batch plants at the quarry, as well as the Planning Board's imposition of over $20,000 in fees. The Land Association of Washington, a citizens' group, and ten individual neighbors[1] (collectively referred to as LAW) cross-appeal, contending that the Planning Board violated LAW's due process rights through biased and arbitrary actions, that the court erred in denying LAW's motion to remand, and that the

court erred in not vacating Lane's permit for the entire quarry project.

[¶ 2] After review of the record, we conclude that the Planning Board:

- Permissibly determined that rock crushing is an integral aspect of mineral extraction and, therefore, the Board properly approved the initial permit for a rock crusher.
- Permissibly determined that bituminous hot mix and concrete batch plants are not permitted in the Town's Farm and Forest District and, therefore, properly denied a permit for the plants as accessory uses.
- Impermissibly imposed upon Lane unscheduled fees beyond the $50 permit fee.
- With respect to the cross-appeal, did not violate LAW's due process rights or act in an arbitrary and capricious manner.

[¶ 3] We therefore vacate the judgment and remand for entry of a judgment that (1) affirms the Planning Board's initial approval of a permit for the rock crusher; (2) denies the permit for the bituminous hot mix and concrete batch plants; and (3) vacates the Board's imposition of fees beyond the $50 permit fee.

## I. BACKGROUND

### A. The Planning Board's Initial Hearings and Decision

[¶ 4] In March 2001, Lane applied to the Planning Board for a conditional use permit to construct and operate in the Town's Farm and Forest District a hard rock quarry as the primary use, with a rock crusher and bituminous hot mix and

---

1. The named individual appellants are: Robert Marks, Paula Green, Lowell Freiman, Joan Freiman, Zola Coogan, Sandra Bourrie, Guy Bourrie, Steve Ocean, Kathy Ocean, and Ann N. Farley.

concrete batch plants as accessory uses. The Planning Board subsequently held numerous public hearings to consider whether the quarry, rock crusher, and plants were allowed under the Town of Washington's Land Use Ordinance. LAW, a citizens' group of abutters and neighbors to Lane's parcel, opposed the application. After determining that rock crushing goes "hand in hand" with mineral extraction, the Planning Board approved the application for the quarry and the rock crusher pursuant to the Land Use Ordinance, and a permit was issued in August 2002.[2] The Planning Board voted to deny Lane's application with respect to the plants, however, finding that they were not accessory uses and were also manufacturing in nature and therefore prohibited in the Farm and Forest District where the operation was to be located.

### B. The Initial Decision of the Board of Appeals

[¶ 5] Both Lane and LAW filed appeals to the Town Board of Appeals. In May 2003, the Board of Appeals upheld the Planning Board's decisions to: (1) grant Lane's application to operate the quarry; (2) disallow the plants, finding that they are not listed as allowable uses in the Farm and Forest District and were not accessory uses to the quarry; and (3) assess fees to Lane in the amount of approximately $20,000, finding that although the Town had no established fee schedule, the Planning Board could impose fees on the applicant during the review process. The Board of Appeals reversed the Planning Board's permit for the rock crusher, finding that it was not permitted as part of the conditional use of mineral extraction.

### C. The Superior Court's Initial Decision

[¶ 6] LAW subsequently filed a complaint pursuant to Rule 80B of the Maine Rules of Civil Procedure against Lane and the Town in the Superior Court appealing the Town's approval of the quarry and raising claims of due process violations by the Planning Board due to the chairman's alleged bias and arbitrary actions. Lane also filed a Rule 80B appeal challenging: (1) the denial of the rock crusher; (2) the denial of the plants; and (3) the imposition of fees.

[¶ 7] The Superior Court consolidated the two cases, directly reviewed the Planning Board's findings, and issued a decision in March 2005 partially affirming the Planning Board's actions. The court upheld the Planning Board's decision to deny the plants and to impose $20,497.70 in fees. The court found that because Lane had withdrawn the plant applications, it did not need to consider the issue, but it also determined that the Planning Board had properly concluded that the requested plants were not "accessory uses" pursuant to the Land Use Ordinance. The court rejected LAW's complaint, finding no evidence of unconstitutional bias or arbitrary and capricious action.

[¶ 8] The court, however, vacated the Planning Board's determination that rock crushing goes "hand in hand" with mineral extraction, rather than qualifying as a separate, accessory use. The court reached this conclusion after determining that, as a matter of law, "mineral extraction" does not include the operation of a rock crusher. The court nevertheless remanded the issue to the Planning Board, noting that "the Board may still properly permit this activity within the [Farm and Forest District] if

---

**2.** We previously determined in *Lane Constr. Corp. v. Town of Washington*, 2007 ME 31, ¶ 12, 916 A.2d 973, 976, that the Town's Mining Ordinance is not applicable to Lane's mineral extraction permit.

it meets the [Land Use Ordinance's] definition of 'accessory uses.' "

## D. The Planning Board's Reconsidered Decision

[¶ 9] On remand, the Planning Board concluded that the rock crusher was not an accessory use under the Land Use Ordinance. As a result, Lane's permission to operate the rock crusher was revoked. Lane appealed this decision to the Board of Appeals, which affirmed the Planning Board's decision.

[¶ 10] Lane again sought review by the Superior Court, arguing that the Planning Board and Board of Appeals erred in finding that the rock crusher did not qualify as an accessory use. LAW, on the other hand, argued that changes to the project since the Planning Board had considered it—such as the denial of the plants and the rock crusher—necessitated new findings as to the proposal's present compliance with the Land Use Ordinance. Accordingly, LAW filed a motion that sought to have the case remanded for additional fact-finding. The Superior Court upheld the Planning Board's findings and denied LAW's motion. These appeals followed.

## II. DISCUSSION

### A. Standard of Review

[¶ 11] Because the Board of Appeals and the Superior Court both acted in an appellate capacity, we review directly the Planning Board's decisions for an abuse of discretion, error of law, or findings not supported by substantial evidence in the record. *Fitanides v. City of Saco*, 2004 ME 32, ¶ 23, 843 A.2d 8, 15. The party seeking to overturn any of the Board's decisions bears the burden of persuasion. *Zegel v. Bd. of Soc. Worker Licensure*, 2004 ME 31, ¶ 14, 843 A.2d 18, 22.

### B. The Planning Board's Initial Approval of the Rock Crusher

[¶ 12] Lane seeks reinstatement of the Planning Board's approval of the rock crusher as part of a permissible conditional use under the Land Use Ordinance. The Planning Board granted its approval after it determined that a rock crusher goes "hand in hand" with, and is therefore part of, quarrying.

[¶ 13] Whether a proposed use falls within the terms of a zoning ordinance is a question of law that we review de novo. *See Peregrine Developers, LLC v. Town of Orono*, 2004 ME 95, ¶ 9, 854 A.2d 216, 219; *see also Wells v. Portland Yacht Club*, 2001 ME 20, ¶ 8, 771 A.2d 371, 374; *Hopkinson v. Town of China*, 615 A.2d 1166, 1168 (Me.1992). Nevertheless, "in certain factual situations, even though the terms of the zoning ordinance are ... defined by the Court as a matter of law, whether or not the proposed structure or use meets the definition in the application thereof may be a matter of fact for initial Board determination." *Goldman v. Town of Lovell*, 592 A.2d 165, 168 (Me.1991) (quotation marks omitted). Where, as here, the determination of whether a particular activity—rock crushing—is part of a more comprehensive use—quarrying—is greatly informed by the relevant factual determination made by the Planning Board, we will review the board's decision for clear error. *See Boivin v. Town of Sanford*, 588 A.2d 1197, 1200 (Me.1991) ("[T]he application of [the definition of 'accessory use'] to a particular situation presents questions of fact for determination by a board of appeals."); *Town of Shapleigh v. Shikles*, 427 A.2d 460, 465 (Me.1981) (stating that the application of "accessory use" to a situation "may often present and depend upon questions of fact ... even though the meaning of terms or expressions in zoning ordinances is a question of

construction and one of law"). Therefore, LAW, the party that sought to overturn the Planning Board's finding that a rock crusher goes hand in hand with a quarry, bears the burden of showing the Board's initial determination was not supported by substantial evidence in the record.

[¶ 14] LAW does not contend that the Planning Board erred in its initial determination that a rock crusher is integral to the mineral extraction use. Indeed, LAW readily admits that this determination is supported by competent evidence. Instead, LAW argues that the Planning Board lacked authority to issue a permit for a rock crusher integral to the process of quarrying. According to LAW, an activity that is prohibited if standing alone does not become authorized merely because it is integral to a separate, authorized activity.

[¶ 15] We disagree. The Land Use Ordinance makes no distinction between an integral use and the primary use of which it is a part. Substantial evidence in the record supports the Planning Board's finding that the crushing and extraction of rock are not distinct processes, but rather that rock crushing is an integral part of the process of mineral extraction. The Board weighed, accepted, and rejected a vast amount of evidence over a sixteen-month period. Although it reviewed evidence that may have equally warranted the contrary conclusion, the Board acted within its discretion in reaching its conclusion.

[¶ 16] Because the Planning Board determined that under the Town's Land Use Ordinance crushing is an integral aspect of

mineral extraction, rather than an accessory use, and that mineral extraction is conditionally permissible, the Planning Board possessed the authority to issue a permit for the rock crusher.

## C. The Hot Mix and Concrete Batch Plants

 [¶ 17] Lane asserts that the Planning Board erred in concluding that a bituminous hot mix plant and a concrete batch plant do not qualify as permissible accessory uses to a permissible conditional use.[3]

[¶ 18] According to Lane, shortly before the Planning Board voted to reject the plants as non-accessory uses, the motion before the Board was amended to reject the plants because they were "manufacturing in nature." Lane contends that, as a result, the Planning Board abused its discretion because the Land Use Ordinance does not define "manufacturing use" and the plants therefore could not possibly be an explicitly permitted activity. Lane further contends that this vote failed to decide whether the plants qualified as accessory uses.

[¶ 19] The Town disagrees with Lane that the Planning Board officially voted to find that the plants were "manufacturing in nature," arguing instead that the Planning Board used this descriptive term merely to explain why the plants did not qualify as accessory uses.

[¶ 20] We need not decide whether the Planning Board amended the motion before it because doing so would not change the result of this case. Under either anal-

---

**3.** As an initial matter, the Superior Court erred in treating the Planning Board's denial of these permits as unpreserved. After the Planning Board voted to deny the hot mix plant and concrete batch plant permits, Lane withdrew this portion of its application at the encouragement of the Planning Board so that the Planning Board could rule separately on the remaining permit application. Lane agreed to this procedural move because the Planning Board erroneously believed that it could only approve or deny an application in its entirety. We, therefore, reach the merits of Lane's claim.

ysis, the Planning Board permissibly rejected Lane's application for the accessory permits.

[¶ 21] The Town's Land Use Ordinance defines "accessory uses" as those uses "clearly incidental and subordinate to a principal building or use allowed in the district in which it is located...." In *Town of Shapleigh*, we set forth factors that may be relevant for determining whether a use is accessory within the terms of a zoning ordinance.[4] 427 A.2d at 465. We also noted that the application of the "accessory use" concept to a particular situation may present and depend upon questions of fact. *Id.* Therefore, if the Planning Board's vote is interpreted as rejecting Lane's application on the grounds that the plants do not qualify as accessory uses, Lane bears the burden of showing that this determination was not supported by substantial evidence in the record.

[¶ 22] Because there exists competent evidence in the record to support the Planning Board's conclusion, we conclude that Lane fails to meet this burden. First, the nature of the district itself supports the Planning Board's conclusion. The Land Use Ordinance, noting the importance of "the preservation of undeveloped land," states that the purpose of the Farm and Forest District is "to maintain the fields and forestlands" and to protect areas of the town "not suitable for intensive development." Second, evidence was presented showing that the plants would result in a noticeable increase in traffic to the site. Third, and most importantly, during the Planning Board's deliberations, opponents of Lane's application argued that the plants would be the primary use in all but

name. If, notwithstanding their physical footprint, the plants would in fact amount to the primary use of the site, the Planning Board permissibly determined that Lane improperly sought approval of an otherwise impermissible use merely by artfully structuring its application. An application for a pulp and paper mill in a conservation district does not become permissible merely because the applicant describes the mill as an accessory use to the primary activity of growing trees. The same logic applies to bituminous hot mix and concrete batch plants proposed in conjunction with a quarry.

[¶ 23] Interpreting the Planning Board's vote as a vote that the plants amounted to a manufacturing use does not change the outcome of this issue. Although "manufacturing" is not defined in the Land Use Ordinance, it does define "light industrial uses" as those activities involving the processing of finished products from previously prepared materials. The definition of "light industrial uses" specifically excludes "the processing of raw materials." Because the processing of raw materials is not a "light" industrial use, it must either be a "non-light" industrial use or not an industrial use at all. The Land Use Ordinance in effect at the time of Lane's application, though, did not define industrial uses apart from "light industrial uses." Nevertheless, because the processing of raw materials amounts to more of an industrial use than those activities listed as light industrial uses, any district not suitable for development reaching the level of intensity of light industrial uses must also not be suitable for the more intensive processing of raw materials.[5]

---

**4.** These factors include, but are not limited to, "the size of the land area involved, the nature of the primary use, the use made of the adjacent lots by neighbors, the economic structure of the area and whether similar uses or struc-

tures exist in the neighborhood on an accessory basis." *Town of Shapleigh v. Shikles*, 427 A.2d 460, 465 (Me.1981).

**5.** The Town's amended Land Use Ordinance supports this conclusion. The Land Use Ordi-

[¶ 24] Under the ordinance, a "light industrial use" is not permitted in the Farm and Forest District. Lane argues that such uses should nonetheless be permitted if they are accessory uses to another permitted use. As previously noted, to permit an otherwise prohibited industrial use merely because an applicant claims the use is pendant to a permissible conditional use would circumvent the ordinance's objective "to maintain the fields and forestlands" in this district. "We construe an ordinance in accordance with its objectives." *Brackett v. Town of Rangeley*, 2003 ME 109, ¶ 16, 831 A.2d 422, 427. Light industrial uses, and those uses that entail more intense development and that are not explicitly allowed, cannot be accessory uses to a permissible conditional use in the Farm and Forest District. Therefore, even if the Planning Board rejected the plants on the ground that the plants amounted to a "manufacturing" use, the Planning Board properly rejected Lane's application for the accessory permits.

### D. The Planning Board's Imposition of Fees

[¶ 25] Lane also argues that the Planning Board improperly imposed over $20,000 on Lane in unscheduled fees. The Town argues that the Planning Board could impose such fees to cover the Town's estimated costs associated with the conditional use permit even though it did not publish a set fee schedule beforehand.

[¶ 26] Under the plain language of the Town's Land Use Ordinance, a fee based on "estimated administrative, enforcement, consulting, and legal costs" is authorized "according to a fee schedule established by the Planning Board." The ordinance provides that the fee must accompany the application for a conditional use permit. The ordinance does not expressly empower the Planning Board to levy additional fees—even those based on actual costs incurred by the Planning Board—after a party has submitted its conditional use application.

[¶ 27] At the time of Lane's application, the Planning Board had not adopted a schedule of fees with which to estimate the costs that would be incurred by the Town in conjunction with an application. The Planning Board only required Lane to pay a $50 permit fee at the time of application. Because the Planning Board lacks authority under the ordinance to impose fees after the fact, on an ad hoc basis, we vacate the Planning Board's decision to impose fees beyond the established $50 permit fee.

### E. LAW's Due Process Claims

[¶ 28] In its cross-appeal, LAW contends that the Planning Board violated LAW's due process rights through biased and arbitrary actions. In response, the Town contends that the hearing resulted in a full and fair opportunity for the opponents of Lane's application to be heard on the issues and that any perceived bias was harmless and did not affect the Planning Board's decision. We conclude that LAW failed to prove that the Planning Board violated its due process rights.

[¶ 29] A party before an administrative board is entitled to a fair and unbiased hearing under the Due Process Clauses of the United States and Maine Constitutions. *Gorham v. Town of Cape Elizabeth*, 625 A.2d 898, 902 (Me.1993). Where the Superior Court does not take additional evidence, but makes its decision

---

nance, as amended, defines "INDUSTRIAL USES" as: "activity involving the extraction of or bringing in of raw materials or of components, manufacturing, packaging, assembly, or distribution of finished products, *including the processing of raw materials;* mining and mineral extraction; and junk and salvaging operations." (Emphasis added.)

entirely on the administrative record, we directly examine the record developed before the Board in the same manner the Superior Court did for abuse of discretion, error of law, or findings unsupported by substantial evidence in the record. *Driscoll v. Gheewalla,* 441 A.2d 1023, 1026 (Me. 1982). Maine Rule of Civil Procedure 80B(d) allows a party to file a motion for trial of the facts in order to permit the introduction of evidence of bias that does not appear in the administrative record. *Baker's Table, Inc. v. City of Portland,* 2000 ME 7, ¶ 9, 743 A.2d 237, 240–41. Because LAW did not file a motion for a trial of the facts, our review is limited to the record. M.R. Civ. P. 80B(f).

### 1. LAW's Claim of Bias Against the Planning Board's Chairman

[¶ 30] LAW asserts that the chairman of the Planning Board was predisposed to approving Lane's application prior to hearing evidence in the case. LAW cites a number of factors supporting its contention.[6] Although it is clear that the chairman personally supported Lane's application, the evidence provided by LAW falls short of proving that his conduct at the meetings was biased or that he participated in them from a standpoint of predisposition. The extensive Planning Board transcripts show that the chairman refereed an exhaustive, highly contentious Planning Board process that extended over a period of sixteen months. Although he often had difficulty keeping control over a very outspoken group of town residents opposed to the project, he nevertheless moved the process forward while following the presentations, questioning witnesses, and fairly discussing the evidence. *See* 5 M.R.S. § 9062(3)(C) (2007) (stating that presiding officers have the authority to "[r]egulate the course of the hearing"); *Gorham,* 625 A.2d at 902–03, On this record, his actions cannot be said to be the result of bias. *Cf. Liteky v. United States,* 510 U.S. 540, 555–56, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) (recognizing that "expressions of impatience, dissatisfaction, annoyance, and even anger" by a judge do not constitute bias or prejudice). Finally, while the chairman's statements to the local newspaper after the Planning Board had approved Lane's permit may have been of sufficient magnitude to warrant his recusal from future deliberations, they did not demonstrate sufficient bias to taint the prior proceedings.

### 2. LAW's Contention that the Planning Board Acted in an Arbitrary and Capricious Manner

[¶ 31] LAW contends that the Planning Board acted arbitrarily and capriciously in acting on outside information and advice throughout the hearing process, in reopening the hearing process to accept new evidence from Lane, and in allowing Lane to substantially amend its application after the close of the hearing process.

---

**6.** These factors include: (1) prior to hearings on Lane's application, the chairman wrote a letter to the local newspaper on an unrelated matter expressing disdain for the land use ethic of people "from away"; (2) immediately following the conclusion of the Planning Board's first public hearing, the chairman allegedly stated to a former chairman that the Lane project would be good for the landowner who signed the lease with Lane and that he should have what he signed on for with Lane; (3) a town resident reported hearing the chairman at a local store talking about the project and apparently trying to engage others in conversation about it; and (4) after the Planning Board approved Lane's permit, the chairman stated in an interview with the local newspaper that he believed LAW was interfering with the process by challenging various Planning Board decisions and that the Town needed the development.

[¶ 32] This Court will vacate "an agency's action if it results in procedural unfairness." *Hopkins v. Dep't of Human Servs.*, 2002 ME 129, ¶ 12, 802 A.2d 999, 1002 (quotation marks omitted). An agency's action can be "arbitrary and capricious if it was not the product of the requisite processes." *Id.* (quotation marks omitted).

[¶ 33] LAW first claims that the chairman relied erroneously on advice from the Maine Municipal Association (MMA) and that this reliance amounted to an evaluation of Lane's application based on information outside the administrative record. The record, though, indicates only that the chairman permissibly relied on the MMA for advice or guidance on procedural matters related to the duties and powers of the Planning Board. *See Smith v. Town of Pittston*, 2003 ME 46, ¶ 3, 820 A.2d 1200, 1202 (planning board relied on advice from the MMA regarding the legal requirements for septage spreading applications); *see also* 5 M.R.S. § 9055(2)(B) (2007) (creating an exception to the ban on ex parte communications for agency assistance). Although a better course of action may have been for the Planning Board, as a body, to seek the assistance of the MMA on the record, the fact that the chairman independently consulted with the MMA on non-substantive issues does not amount to a violation of due process or an arbitrary and capricious decision. *See S. Me. Props. Co. v. Johnson*, 1999 ME 37, ¶ 9, 724 A.2d 1255, 1257 (stating that procedural errors are harmless unless they are inconsistent with substantial justice and result in prejudice).

[¶ 34] LAW also contends that the Planning Board impermissibly reopened the hearing process to accept new evidence from Lane. The Board allowed Lane an opportunity to submit new information because the Board had previously misconstrued Lane's proposed average extraction amount as a proposed maximum yearly tonnage. When the Board realized its mistake, it requested information as to what the maximum tonnage would be, and it allowed Lane's plan to be modified to include this clarification without a corresponding opportunity for public comment. We cannot say that permitting Lane to clarify a discrete technical issue, when Lane had previously made clear during public hearings that the amount was only an average, was arbitrary or capricious. An administrative board needs to strike a fair and reasonable balance between its interest in efficiency and the public's right to speak, and in view of the extensive hearings and deliberations conducted in this case, that balance was properly struck in this instance. *See Crispin v. Town of Scarborough*, 1999 ME 112, ¶¶ 19–22, 736 A.2d 241, 247–48.

[¶ 35] Furthermore, contrary to LAW's contention, our prior precedent does not require a planning board to deny an entire application merely because it initially proposed, in part, a prohibited use. In *Beckley v. Town of Windham*, we remanded with instructions to vacate a planning board's permit for a prohibited structure because the permit included authorization to construct a prohibited commercial structure. 683 A.2d 774, 776 (Me. 1996). We never addressed whether the planning board was required to dismiss the entire application or what the planning board should do if the applicant then decided to go forward with the project without the commercial building. Therefore, *Beckley* does not govern this case.

[¶ 36] Finally, our decision upholding the Planning Board's initial approval of the rock crusher and denial of the plants renders moot LAW's claim that the Superior Court abused its discretion in denying LAW's motion to remand.

### III. CONCLUSION

[¶ 37] In summary, although reasonable people may disagree with the Planning Board's decision in this case, it permissibly determined that rock crushing is an integral aspect of quarrying. The Superior Court therefore erred in affirming the Appeals Board's vacation of the Planning Board's initial approval of the rock crusher. The Planning Board did not err in denying Lane's request for permits for a hot mix plant and a concrete batch plant in a district that prohibits industrial uses. The Superior Court also erred in affirming the Planning Board's imposition of unscheduled fees of over $20,000. Finally, the Planning Board did not violate LAW's due process rights, nor did it act arbitrarily and capriciously.

The entry is:

Judgment vacated. Remanded to the Superior Court for the entry of a judgment: (1) vacating the judgment of the Board of Appeals and affirming the Planning Board's initial approval of the rock crusher as part of the conditional use permit; (2) vacating that portion of the Planning Board's award of fees beyond the initial $50 filing fee; and (3) affirming the denial of LAW's cross-appeal.