STATE OF MAINE
CUMBERLAND, ss

STATE OF MAINE
Cumberland, ss, Clerk's Office

JUL 27 2016

RECEIVED

SUPERIOR COURT
CIVIL ACTION
Docket No. AP-15-045

APPLETREE COTTAGE,
LLC,

       Petitioner

v.

TOWN OF CAPE ELIZABETH,

       Respondent

DECISION AND ORDER

Before the court are petitioner Appletree Cottage, LLC's Rule 80B appeal and petitioner's motion to supplement the record. Petitioner challenges respondent Town of Cape Elizabeth's approval of a permit authorizing construction of two buildings on property owned by Christopher Bond. For the following reasons, the decisions of the Code Enforcement Officer (CEO) and Zoning Board of Appeals (Board) are affirmed and the motion to supplement the record is denied.

PROCEDURE

Petitioner filed its Rule 80B appeal on December 4, 2015 and its brief on January 19, 2016. By order dated February 26, 2016, the court granted petitioner's motion for oral argument. Respondent filed its brief on March 3, 2016. Petitioner filed a reply on March 15, 2016. Argument was held on June 1, 2016.

On June 15, 2016, petitioner filed a motion to reopen and supplement the record. Respondent filed an objection on July 5, 2016. Petitioner filed its reply on July 12, 2016.

FACTS

Mr. Bond owns property located at 15 Sunrise Drive in Cape Elizabeth. (R. 1.) The property is located in the Residence A District and contains a 672 square foot one bedroom cottage and a garage. (R. 32, 44.) Petitioner owns abutting property. (R. 20, 42.)

1

On June 30, 2015, Mr. Bond submitted an application to the CEO for a permit to construct two detached buildings on the property. (R. 1-7.) In the application, Mr. Bond represented that the buildings would be "new accessory structures" with dimensions of 12 feet by 12 feet each. (R. 1-2.) Mr. Bond listed the number of existing bedrooms on the property as "one" and the number of additional bedrooms as "two." (R. 2.) A permit for "two 12' by 12' accessory structures" was approved by the CEO on August 21, 2015 and issued on August 24, 2015.[1] (R. 1, 8.)

Petitioner appealed the CEO's approval to the Board on September 18, 2015. (R. 16.) Prior to the hearing on the appeal, Mr. Bond submitted written materials in which he explained that the buildings "were designed to add space for any unforeseen, unanticipated or incidental use that will augment the very small primary structure." (R. 33.) These uses may include entertainment, hobbies, office, additional sleeping, and general living. (Id.) Mr. Bond also noted that the buildings will "only serve as sleeping space when the primary structure's capacity is inadequate," and that, even with the buildings, the total square footage on the property will be only 960 square feet. (R. 32, 36.)

The Board heard the appeal on October 27, 2015. (R. 40.) Mr. Bond's testimony at the hearing indicated that sleeping will not take place in the buildings "except as needed on an incidental and variable basis." (R. 57.) As an example, someone who is renting the property would sleep in the cottage, but if that person had guests, the guests would sleep in the buildings. (R. 60.) Mr. Bond also clarified that neither of the buildings will contain a bathroom, refrigerator, or washer/dryer. (R. 57.) Anyone who stays in the buildings must use those facilities in the cottage. (R. 58-59, 65.) The CEO's

[1] Although the record is somewhat unclear, it appears that the buildings have not yet been constructed. (See, e.g., R. 56 ("When it is finished, 15 Sunrise Drive will not be a motel, as Appletree has asserted."); R. 61 ("Do you have a picture of what it's supposed to look like?").)

2

testimony confirmed that the small size of the buildings would prevent any future construction of bathrooms in the buildings. (R. 67.) The Board denied the appeal and found that the buildings are accessory structures because the cottage is "entirely functional" on its own, and the buildings merely provide "space for incidental living and sleeping requirements." (R. 44-45.)

DISCUSSION

1. Standard of Review

The party challenging the decision of a local authority or a municipal board has the burden of demonstrating an error of law, an abuse of discretion, or findings not supported by substantial evidence. Aydelott v. City of Portland, 2010 ME 25, ¶ 10, 990 A.2d 1024; Mills v. Town of Eliot, 2008 ME 134, ¶ 18, 955 A.2d 258. Interpretation of a zoning ordinance by a board is reviewed de novo. See Isis Dev., LLC v. Town of Wells, 2003 ME 149, ¶ 3, 836 A.2d 1285. "The terms or expressions in an ordinance are to be construed reasonably with regard to both the objectives sought to be obtained and the general structure of the ordinance as a whole." Jordan v. City of Ellsworth, 2003 ME 82, ¶ 9, 828 A.2d 768 (citation omitted). "The judgment of the court may affirm, reverse, or modify the decision under review or may remand the case to the governmental agency for further proceedings." M.R. Civ. P. 80B(c).

2. 80B Appeal

A. Operative Decision

The parties assert that the operative decision is the CEO's approval of the permit. (Pet'r's Br. 5-6; Resp.'s Br. 4; Pet'r's Reply 1.) Petitioner seeks review of the Board's decision, however, and both parties in their briefs refer to matters before the Board. (Compl. ¶¶ 24-29; Pet'r's Br. 7-16; Resp.'s Br. 11-12.)

3

The operative decision is the decision of the "tribunal of original jurisdiction" that acts "as both fact finder and decision maker." Peregrine Developers, LLC v. Town of Orono, 2004 ME 95, ¶ 9, 854 A.2d 216. The Board acts as both fact finder and decision maker unless the ordinance explicitly directs that it act only in an appellate capacity. See 30-A M.R.S. § 2691(3)(D) (2015) (requiring de novo review); Mills, 2008 ME 134, ¶ 14, 955 A.2d 258. If the ordinance directs the Board to act only in an appellate capacity, the court reviews the CEO's decision directly. Stewart v. Town of Sedgwick, 2000 ME 157, ¶ 4, 757 A.2d 773.

Respondent's ordinance grants the Board the power "[t]o determine whether the decision of the Code Enforcement Officer is in conformity with the provisions of this Ordinance, to modify such decision to conform with such provisions, and to interpret the meaning of the Ordinance in all cases of uncertainty." (R. 215; Cape Elizabeth, Me., Zoning Ordinance § 19-5-2.A (Sept. 11, 2014).) The United States District Court for the District of Maine has interpreted this provision as providing for appellate review. Compare Portland Cellular P'ship v. Inhabitants of the Town of Cape Elizabeth, 139 F. Supp. 3d 479, 486-87 (D. Me. 2015) ("Unless the ordinance or statute specifically calls for the board of appeals to act as both fact-finder and appellate review tribunal, the board reviews a decision of the CEO in an appellate capacity only."), with 30-A M.R.S. § 2691(3)(D), and Mills, 2008 ME 134, ¶ 14, 955 A.2d 258 ("We have previously held that 30-A M.R.S. § 2691(3)(D) (2007), part of the statute authorizing municipalities to establish boards of appeal, 'requires boards of appeal to conduct hearings de novo, unless the municipal ordinance explicitly directs otherwise.'" (quoting Yates v. Town of Southwest Harbor, 2001 ME 2, ¶ 11, 763 A.2d 1168)). The Law Court in Mills also, however, quotes Stewart as follows: "'Unless the ordinance or statute specifically calls for the Board to act as both factfinder and appellate review tribunal, the Board will act

4

in only one capacity, either as a tribunal of original jurisdiction, holding a hearing de novo, or as an appellate tribunal, reaching its decision on the basis of the record below.'" Mills, 2008 ME 134, ¶ 14, 955 A.2d 258 (quoting Stewart, 2000 ME 157, ¶ 10, 757 A.2d 773). The court in Stewart was distinguishing an "amalgamated procedure" as an exception to the rule. Id.

The Superior Court has interpreted respondent's ordinance as providing for de novo review. Murphy v. Goldman, 2013 Me. Super. LEXIS 46, at *3-4 (May 10, 2013). The analysis in Murphy is consistent with 30-A M.R.S. § 2691(3)(D), as interpreted by the Law Court, in requiring de novo review unless the ordinance explicitly directs otherwise. See id. at *3 ("None of the parties have directed the court to any Cape Elizabeth ordinance in this case that would limit the ZBA to a purely appellate role. Accordingly the ZBA was required to conduct a de novo hearing in this case."); see Stewart, 2000 ME 157, ¶ 11, 757 A.2d 773. A review of other ordinance language the Law Court has determined permits appellate review only, however, is similar to language in respondent's ordinance. See, e.g., Gensheimer v. Town of Phippsburg, 2005 ME 22, ¶ 11, 868 A.2d 161; Yates, 2001 ME 2, ¶¶ 12-14, 763 A.2d 1186; cf. Stewart, 2000 ME 157, ¶ 11, 757 A.2d 773. Respondent believes the Board's review is de novo. The Chairman of the Board stated that the Board was conducting de novo review. (R. 75; Resp.'s Br. 4.)

Based on this uncertainty, the court reviews both the Board's decision and the CEO's approval of the permit.[1]

---

[1] Review of the Board's decision disposes of petitioner's argument that the Board erred by basing its denial of petitioner's appeal on information that was not presented to the CEO at the time the CEO approved the permit. (Pet'r's Br. 7-8); see Stewart, 2000 ME 157, ¶ 7, 757 A.2d 773 ("When a Board holds a hearing de novo, it does not examine evidence presented to the decision maker or tribunal below ... Instead, it looks at the substantive issues afresh,

B.  Accessory Structures

Petitioner argues that the buildings cannot be accessory structures because they triple the number of bedrooms on the property, and their use will not be clearly incidental to the use of the cottage. (Pet'r's Br. 9-14; Pet'r's Reply 2-5.) Accessory structures are permitted in the Residence A District. (R. 120; Cape Elizabeth, Me., Zoning Ordinance § 19-6-1(B)(4)(a).) The ordinance defines "accessory building or structure" as:

> A detached, subordinate building, the use of which is clearly incidental and related to that of the principal building or use of the land, and which is located on the same lot as the principal building or use. For residential uses, accessory buildings and structures shall include, but not be limited to, the following:
>
> 1. garage
> 2. gazebo
> 3. greenhouse
> 4. home workshop . . .
> 5. recreational facilities for the use of occupants of the residence, such as a swimming pool or a tennis court, and related structures
> 6. Agricultural or aquacultural buildings or other structures . . .
> 7. wharf, dock, landing, or boathouse

(R. 82; Cape Elizabeth, Me., Zoning Ordinance § 19-1-3.) Although the ordinance does not define "incidental," its common meaning is "[s]ubordinate to something of greater importance; having a minor role." Black's Law Dictionary 830 (9th ed. 2009); (see R. 82; Cape Elizabeth, Me., Zoning Ordinance § 19-1-3 ("All words not defined herein shall carry their customary and usual meanings.").)

Substantial evidence supports the CEO and Board's finding that the buildings are subordinate to the cottage. Mr. Bond's application and his written materials and testimony before the Board indicated that the buildings provide additional space to

undertakes its own credibility determinations, evaluates the evidence presented, and draws its own conclusions.").

augment the cottage. (R. 1-2, 33, 56-57.) Further, the buildings will not be self-sufficient because they will not contain a bathroom, refrigerator, or washer/dryer. (R. 57-59, 65.) According to the CEO, the small size of the buildings would prevent any future construction of a bathroom. (R. 67.) Neither the CEO nor the Board erred in finding that the buildings are subordinate to the cottage because the use of the buildings will always be dependent on the use of the cottage. See Town of Shapleigh v. Shikles, 427 A.2d 460, 465 (Me. 1981) ("[A]pplication to a particular situation of the concept of accessory use or structure as defined by the instant zoning ordinance may often present and depend upon questions of fact for initial administrative determination by . . . [the] zoning board of appeals . . . .").

Petitioner's argument that an incidental use cannot include the primary use of the property is unpersuasive. (Pet'r's Br. 9-12.) Petitioner cites a Connecticut Supreme Court case for the proposition that an incidental use "must not be the primary use of the property but rather one which is subordinate and minor in significance."[3] Lawrence v. Zoning Bd. of Appeals, 264 A.2d 552, 554 (Conn. 1969). The Law Court has interpreted Lawrence as holding that "the essence of an accessory use or structure by definition admits to a use or structure which is dependent on or pertains to a principal use or main structure, having a reasonable relationship with the primary use or structure and by custom being commonly, habitually and by long practice established as reasonably associated with the primary use or structure." Town of Shapleigh, 427 A.2d at 465.

The proposed uses of the buildings are dependent on, and have a reasonable relationship with, the primary use of the cottage, which is as a dwelling place. (R. 34-

[3] Petitioner also cites Lane Constr. Corp. v. Town of Washington for this proposition. 2005 Me. Super. LEXIS 46, at *18 (Mar. 29, 2005); (R. 21). The Law Court vacated that portion of the Superior Court's decision, however, on the ground that the question of whether a use is integral to another use is a question of fact, and substantial evidence supported the Planning Board's finding. Lane Constr. Corp. v. Town of Washington, 2008 ME 45, ¶¶ 15, 37, 942 A.2d 1202.

35.) Lawrence provides that the use of the buildings must not be "the primary use of the property." Lawrence, 264 A.2d at 554. The CEO and Board's classification of the buildings as accessory structures is consistent with Lawrence and Town of Shapleigh.

C. Setback Requirement

Petitioner next argues that the buildings will not comply with the minimum side setback requirement under section 19-4-3.A.1.a. (Pet'r's Br. 14.) The ordinance allows construction of new structures on developed nonconforming lots[·] as follows:

> Any existing principal or accessory building or structure may be modified, enlarged, or relocated or a new building or structure constructed even though it does not conform to the setback requirements of the district in which it is located provided that such modification, construction, or relocation conforms to the standards, except minimum lot size, set forth in Sec. 19-4-3.A.1.a. above.

(R. 114; Cape Elizabeth, Me., Zoning Ordinance § 19-4-3.A.2.a.) Section 19-4-3.A.1.a establishes a 25-foot side setback in the Residence A District. (R. 113; Cape Elizabeth, Me., Zoning Ordinance § 19-4-3.A.1.a.) Petitioner argues that the permit violates section 19-4-3.A.1.a because the application and accompanying site plan indicate a side setback of 20 feet. (R. 2, 4.)

The 25-foot setback under section 19-4-3.A.1.a applies, however, only if the structure does not comply with the setback requirements of the applicable district. (See R. 114; Cape Elizabeth, Me., Zoning Ordinance § 19-4-3.A.2.a (allowing construction "even though it does not conform to the setback requirements of the district").) The side setback requirement in the Residence A District is 15 feet for accessory structures of fewer than 150 square feet. (R. 124; Cape Elizabeth, Me., Zoning Ordinance § 19-6-1.E.2.9.a.) Each building will have fewer than 150 square feet. (See R. 44 (Board's

---

[·] The property is nonconforming because the Residence A District's minimum lot size is 80,000 square feet, and the property is approximately 22,500 square feet. (R. 1, 122; Cape Elizabeth, Me., Zoning Ordinance § 19-6-1.E.2.6.)

8

finding that each structure will be 12 feet by 12 feet).) Therefore, the 15-foot side setback under section 19-6-1.E.2.9.a applies, and the buildings will comply with that setback.

D. Findings of Fact

When a party challenges the adequacy of the Board's findings, the court examines the findings "to determine if they are sufficient to show the parties, the public, and an appellate court the basis for its decision." Comeau v. Town of Kittery, 2007 ME 76, ¶ 9, 926 A.2d 189 (citation omitted). Even when the findings are insufficient, a remand is unnecessary if the facts are "obvious or easily inferred from the record and the general factual findings." Wells v. Portland Yacht Club, 2001 ME 20, ¶ 10, 771 A.2d 371 (citation omitted); see Forester v. City of Westbrook, 604 A.2d 31, 33 (Me. 1992) ("If there is sufficient evidence on the record, the Board's decision will be deemed supported by implicit findings.").

Petitioner first challenges the Board's findings on the ground that they do not address "the size of the land area involved, the nature of the primary use, the use made of the adjacent lots by neighbors, the economic structure of the area and whether similar uses or structures exist in the neighborhood on an accessory basis." (Pet'r's Br. 15.) These are factors the Law Court has stated may be relevant in determining whether a use is an accessory use. Town of Shapleigh, 427 A.2d at 465; see Lane Constr. Corp., 2008 ME 45, ¶ 21, 942 A.2d 1202. The Board did in fact discuss some of these factors. (R. 54, 60, 62, 72.) Petitioner cites no authority that would require the Board to include these factors in its findings.

Petitioner's second challenge is that the Board did not make any findings as to the side setback requirement. (Pet'r's Br. 16.) Although the Board's findings do not mention the side setback requirement, the CEO testified that the buildings are subject to the 15-foot setback under section 19-6-1.E.2.9.a because they are accessory structures of

fewer than 150 square feet each. (R. 44-45, 62.) That fact is also easily inferred by comparing section 19-6-1.E.2.9.a, (R. 124), with the Board's finding that the structures will be 12 feet by 12 feet. (R. 44.) The Board's findings are therefore sufficient.

3. <u>Motion to Supplement the Record</u>

Petitioner seeks to supplement the record with a certificate of occupancy issued by the CEO on May 6, 2016. Petitioner argues that the certificate of occupancy shows that Mr. Bond has "unqualified rights" to use the buildings as two full time additional bedrooms, by virtue of the fact that the CEO listed the number of additional bedrooms as "two" under the heading "for structures to be occupied or for an increase in the number of bedrooms." (Pet'r's Mot. Supplement R. 3.)

Rule 80B(d) allows a party to supplement the record with additional evidence by moving for a trial of the facts within 30 days after the complaint is filed. M.R. Civ. P. 80B(d). Because petitioner did not move for a trial of the facts, supplementation is precluded and review is limited to the record before the Board. M.R. Civ. P. 80B(f); <u>see</u> 3 Harvey & Merritt, <u>Maine Civil Practice</u> § 80B:6 at 443 (3d, 2011 ed.) ("Failure to make such a request waives the right to a trial and restricts the court's review to the existing record.").

Further, even if supplementation were allowed, the inclusion of the certificate of occupancy in the record is unnecessary. <u>See</u> <u>Baker's Table, Inc. v. City of Portland</u>, 2000 ME 7, ¶ 9, 743 A.2d 237 (purpose of Rule 80B(d) is to allow court to obtain facts necessary to the appeal). The record already contains Mr. Bond's approved building permit application, which lists the number of additional bedrooms as "two" under a heading identical to that in the certificate of occupancy. (R. 2.) The certificate of occupancy, therefore, does not add any necessary facts to the record, nor does it alter the testimony and evidence before the Board or its decision.

CONCLUSION

The court reviews both the Board's decision and the CEO's approval of the permit due to the uncertainty as to which decision constitutes the operative decision. Substantial evidence exists in the record to support the CEO and Board's classification of the buildings as accessory structures. The buildings will not violate the side setback requirement because the 15-foot side setback under section 19-6-1.E.2.9.a applies, and the buildings will be set back 20 feet. The Board's findings are sufficient because the Board was not required to include all of the Town of Shapleigh factors, and the facts related to the side setback can be easily inferred from the record. Supplementation of the record is not allowed because petitioner did not file a motion for a trial of the facts, and, in any event, inclusion of the certificate of occupancy in the record is unnecessary.

The entry is

> The Decisions of the Town of Cape Elizabeth Code Enforcement Officer and the Zoning Board of Appeals are AFFIRMED.
>
> Petitioner's Motion to Supplement the Record is DENIED.

Date: July 27, 2016

Nancy Mills
Justice, Superior Court

11